Jaleceya Tate Jimmy Tate

1001 Kamokila BLVD Suit 115

Kapolei, Hawaii 96707

808-990-4639

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 28 2024

at ___ o'clock and ___ min. ___ M
Lucy H. Carrillo, Clerk

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

**CV24   00465 DKW   RT**

**CASE NO.:** [To Be Assigned]

**PLAINTIFFS:**

1. Jimmy Tate

2. Jaleceya Tate

3. Four Minor Children of the Tate Family

**DEFENDANTS:**

1. Calvin McCoy Jr.

2. Donnis McCoy

3. Henry Davies

4. Kimberly Davies

5. Kuyom Davenport

6. Ambreka Calhoun

7. Kerry Robertson

8. Calvin McCoy Sr.

Complaint

Exhibit Index for Tate vs. McCoy et al.

Table of Contents

Exhibit A.1 - A.66

   A.1: Deed in Lieu of Foreclosure

   A.2 - A.5 Financial Statements and bank reports

   A.6 - A.15: Property Abandonment Photos and eviction documents

   A.16 - A.66: Audio transcripts, Witness Affidavit and certified evidence

Exhibit B.1 - B.30

   B.1: Medical records

   B.2 - 30 Additional support evidence of unlawful Access to Jaleceya Tate medical records

Exhibit C.1 - C.54 - Fraud Shell companies, misappropriated Identities and Federal Loan Fraud

Exhibit D.01 - D.106 defendants comprehensive Evidence of misappropriation PPP Loan Fraud and of the Tate Family's identities.

9.  Travis Jennings

10. Tonisha Locus-Footman

11. Flossie McCoy-Perry

12. Crystal Smith

13. Church of God in Christ (COGIC)

14. Church of God in Jesus Christ (COGIJC)

15. Breath of Life Fellowship

16. Signature Contingent Management

17. Grady Memorial Hospital

18. Hope for Tomorrow Deliverance Center Inc.

19. The Harvest Tabernacle Church

20. Dekalb County School District

21. Pathway Forward Men's Ministry Inc.

---

## I. JURISDICTION AND VENUE

This Court has jurisdiction over this action pursuant to **28 U.S.C. § 1331**, as the claims arise under federal statutes, including the Racketeer Influenced and Corrupt Organizations Act **(RICO), 18 U.S.C. § 1962(c) and (d)**, and various federal laws related to fraud, wire fraud, and mail fraud. The Court also has supplemental jurisdiction over the related state law claims under **28 U.S.C. § 1367**, as these claims are so related to the federal claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

This Court has **jurisdiction over the RICO claims** under **18 U.S.C. § 1964(c)**, as the Defendants' acts of racketeering—including the creation and operation of fraudulent shell companies, misuse of Plaintiffs' identities, and coordinated interstate fraud—constitute a pattern of criminal conduct that has directly injured the Plaintiffs' business, property, and emotional well-being.

The Court also has jurisdiction under **28 U.S.C. § 1332(a)** because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. The Plaintiffs are residents of the State of Hawaii, while the Defendants, including corporate entities and individuals, reside in various states, including but not limited to  Georgia, Michigan, and Chicago.

**Venue is proper** in this District under **28 U.S.C. § 1391(b)(2)** because a substantial part of the events or omissions giving rise to the claims occurred in this District. The Defendants, acting in concert as part of an organized criminal enterprise, engaged in fraudulent activities, including the misuse of Plaintiffs' personal information and the creation of shell companies, directly impacting the Plaintiffs, who are residents of Honolulu County, Hawaii. The harms suffered by the Plaintiffs—including financial loss, emotional distress, and reputational damage—were felt primarily in Hawaii, where the Plaintiffs reside.

Moreover, under **28 U.S.C. § 1391(b)(3)**, venue is appropriate because the Defendants, as members of an enterprise operating across state lines, are subject to personal jurisdiction in this District due to their extensive fraudulent activities that targeted residents of Hawaii and other states. Defendants engaged in a coordinated scheme that spanned multiple jurisdictions, but the effects of their actions were acutely felt by the Plaintiffs within the District of Hawaii.

3

**Calder v. Jones, 465 U.S. 783 (1984)** supports jurisdiction in this District, as the Defendants expressly aimed their conduct at Plaintiffs residing in Hawaii, intending to cause harm within this forum. This case establishes that jurisdiction is proper where the harm occurs, even when some or all of the Defendants' actions were committed outside the forum state. Here, the Defendants' conduct was deliberately directed at causing financial and emotional harm to the Plaintiffs, rendering the venue in the District of Hawaii proper.

Finally, the Plaintiffs' RICO claims further support venue in this District under **18 U.S.C. § 1965(a)**, which allows for a civil RICO action to be brought in any district where a defendant "resides, is found, has an agent, or transacts his affairs." The enterprise operated by the Defendants involved extensive financial transactions, wire transfers, and communications that directly affected the Plaintiffs in Hawaii, and many of the fraudulent activities, including the use of Plaintiffs' identities to secure PPP loans, were orchestrated in a manner that targeted Plaintiffs within this jurisdiction.

---

## II. PARTIES

**Plaintiffs:**

1. **Jimmy Tate** – Resident of Honolulu County, Hawaii.

2. **Jaleceya Tate** – Resident of Honolulu County, Hawaii.

3. **[Four minor children of the Tate family]** – Residents of Honolulu County, Hawaii.

---

**Defendants and Their Specific Roles**

1. **Calvin McCoy Jr.** – Architect of Fraudulent Schemes and RICO Violations

   As the Pastor of Hope for Tomorrow Deliverance Center (now Pathway Men's Ministry), Calvin McCoy Jr. orchestrated a multi-state fraudulent enterprise, encompassing over 1000 fraudulent business loans tied to the Tates' and their family members, the misappropriation of church donations, and extensive federal Paycheck Protection Program loan fraud. McCoy used these fraudulent activities to enrich himself, systematically manipulating congregants for financial gain. He also unlawfully accessed Jaleceya Tate's medical records through connections at Grady Memorial Hospital, violating HIPAA and heightening the psychological harm inflicted on the family. His ongoing racketeering activity culminated in a retaliatory campaign against the Tates, including filing a fraudulent TRO and orchestrating a harassment and intimidation campaign.

2. **Donnis McCoy** – Accomplice in Fraud and Cover-Up

   Donnis McCoy, wife of Calvin McCoy, played a significant role in supporting and perpetuating the fraudulent schemes. She helped manipulate church congregants into making large donations under false pretenses, used her access as loan officer to get fraudulent loans for the defendants, personally profiting from the misappropriated funds. Donnis also actively participated in covering up illegal activities, including coercing the Tates to forgive Henry Davies after a violent altercation. Her involvement in fraudulent PPP loans demonstrates her direct financial benefit from the criminal enterprise.

3. **Henry Davies** – Fraud, Assault, and PPP Loan Schemes

   Henry Davies, a teacher employed by the Dekalb County School District, played a

5

critical role in McCoy's fraudulent schemes by recruiting vulnerable students from Columbia Middle School for Mccoy through the guise of a "Christian Club" and applying for multiple fraudulent PPP loans under false names and addresses. In addition, Davies assaulted Jimmy Tate during a church meeting, an act that was followed by a concerted effort to intimidate the Tates and silence their opposition to McCoy's criminal enterprise. His position within the Dekalb County School District was used to extend McCoy's fraudulent network. He was negligently hired by Dekalb County School District after being previously fired from his last teaching job in Alabama for his role in breaking a special needs student arm.

4. **Kimberly Davies** – Key Participant in Fraudulent Schemes and Retaliation

Kimberly Davies, as President of Signature Contingent Management, was instrumental in facilitating fraudulent PPP loans and supporting the retaliatory efforts against the Tates. Kimberly disclosed the Tates' relocation address to Calvin McCoy Jr., further exacerbating the threats and emotional harm faced by the family. Her deep involvement in managing the finances of the fraudulent operation ties her directly to the financial exploitation of the Tates.

5. **Ambreka Calhoun** – Beneficiary of Fraudulent Funds

Ambreka Calhoun, the stepdaughter of Calvin McCoy, was a beneficiary of the funds obtained through fraudulent PPP loans and manipulated church donations. Calhoun used these illicit funds to support her personal business ventures, which served as fronts for McCoy's money-laundering activities. Her direct financial gain from the criminal enterprise ties her to the ongoing harm suffered by the Tates.

6. **Kerry Robertson** – Participant in Retaliation and Financial Exploitation

   Kerry Robertson, a long-time associate of Calvin McCoy, actively participated in applying for fraudulent PPP loans and played a central role in the retaliatory campaign against the Tates. Robertson's intimidation tactics, designed to silence the Tates after they exposed McCoy's schemes, significantly contributed to their emotional and psychological harm.

7. **Calvin McCoy Sr.** – Facilitator of Fraud and Spiritual Legitimacy

   Calvin McCoy Sr., father of Calvin McCoy Jr., provided his son with spiritual legitimacy by ordaining him through the Church of God in Jesus Christ (COGIJC). This ordination allowed Calvin Jr. to expand his criminal enterprise under the guise of religious leadership. McCoy Sr. failed to oversee or intervene in his son's fraudulent activities, which led to the financial and emotional exploitation of the Tates.

8. **Travis Jennings** – Architect of Financial Manipulation Schemes

   Travis Jennings, Pastor of The Harvest Tabernacle Church, taught Calvin McCoy financial manipulation tactics, such as the 10% Covenant Clause, which was used to coerce large financial donations from congregants. Jennings personally benefited from PPP loan fraud and played a key role in equipping McCoy with the tools to defraud and exploit vulnerable church members, including the Tates.

9. **Tonisha Locus-Footman** – Fraud and Breach of Fiduciary Duty

   Tonisha Locus-Footman, a teacher employed by the Dekalb County School District, was actively involved in McCoy's fraudulent PPP loan schemes. She obtained fraudulent loans using shell companies. Her actions contributed to the financial harm inflicted on the Tates and other victims.

10. **Flossie McCoy-Perry** – CFO of Fraudulent Operations

As the Chief Financial Officer of Hope for Tomorrow Deliverance Center Inc., Flossie Perry oversaw the church's financial operations and ignored the laundering of church donations and Paycheck Protection loan funds. Perry's failure to act in her fiduciary capacity allowed McCoy's fraudulent schemes to continue, contributing to the financial and emotional devastation suffered by the Tates.

11. **Crystal Smith** – Informant and Tenant Fraud

Crystal Smith, a long-time church member, falsely presented herself as a victim of McCoy's schemes to secure a rental home from the Tates at below-market rent. Smith later stopped paying rent, forcing the Tates to file for eviction. Unbeknownst to the Tates, Smith was secretly working with McCoy, providing him with information to support the retaliation campaign against the family. Her actions directly contributed to the financial and emotional harm inflicted on the Tates.

12. **Church of God in Christ (COGIC)** – Negligent Ordination and Oversight

COGIC ordained Calvin McCoy Jr. in 2007 despite his lack of formal seminary education and criminal history, which included a conviction for fraud. COGIC's failure to conduct appropriate due diligence and its decision to provide McCoy with spiritual legitimacy allowed him to manipulate congregants and orchestrate a wide-ranging fraudulent enterprise. COGIC's lack of oversight directly contributed to the financial exploitation of the Tates and other congregants.

13. **Church of God in Jesus Christ (COGIJC)** – Spiritual Cover for Fraud

COGIJC, under the leadership of Calvin McCoy Sr., provided spiritual legitimacy to Calvin McCoy Jr. and his associates, allowing them to expand their fraudulent activities

under the guise of religious authority. COGIJC's failure to conduct proper oversight allowed McCoy Jr. to continue defrauding and exploiting the Tates and other church members. The organization negligently ordained Calvin McCoy Jr. as a pastor with no oversight in 2006 despite his extensive criminal felony convictions.

14. **Breath of Life Fellowship** – Facilitator of Ordination and Financial Misconduct

    Breath of Life Fellowship played a central role in the ordination of church leaders involved in McCoy's fraudulent activities. The Fellowship failed to exercise proper oversight and allowed leaders like McCoy to manipulate vulnerable congregants. Breath of Life Fellowship's lack of accountability and ethical standards directly contributed to the Tates' financial exploitation.

15. **Signature Contingent Management aka Signature Brands** – Front for Money Laundering

    Signature Contingent Management, a company operated by Calvin McCoy, was used to launder funds obtained through fraudulent PPP loans and misappropriated church donations. McCoy funneled millions of dollars through the company, using it as a front for his criminal enterprise, and exacerbating the financial harm inflicted on the Tates.

16. **Grady Memorial Hospital** – HIPAA Violations and Complicity

    Grady Memorial Hospital facilitated HIPAA violations by unlawfully granting Calvin McCoy Jr. access to Jaleceya Tate's confidential medical records through Grady's employee Kuyom Renee Davenport. This violation of patient privacy allowed McCoy to manipulate and retaliate against the Tates, heightening the emotional and psychological harm they experienced.

9

17. **Hope for Tomorrow Deliverance Center Inc.** – Center of Fraudulent Activities

    Hope for Tomorrow Deliverance Center Inc., under the leadership of Calvin McCoy Jr., served as the epicenter of his fraudulent schemes. The church was used as a front to misappropriate donations and engage in PPP loan fraud. The church's leadership directly facilitated the financial exploitation of the Tates and other congregants.

18. **The Harvest Tabernacle Church** – Training Ground for Financial Exploitation

    The Harvest Tabernacle Church, led by Travis Jennings, was a key training ground for the financial manipulation tactics used by McCoy and his associates. Jennings provided McCoy with the knowledge and tools to coerce congregants into making substantial financial donations, contributing to the Tates' financial ruin.

19. **Dekalb County School District** – Negligent Employment and Failure to Prevent Fraud

    The Dekalb County School District employed both Henry Davies and Tonisha Footman, who used their positions within the school system to recruit individuals into Calvin McCoy's fraudulent schemes and youth events at the church. Despite clear evidence of their involvement in illegal activities, the school district failed to intervene or take disciplinary action, allowing Davies and Footman to continue their roles in McCoy's criminal enterprise.

20. **Pathway Men's Ministry** – Front for McCoy's Fraudulent Activities

    Pathway Men's Ministry, the rebranded version of Hope for Tomorrow Deliverance Center, continued to serve as a front for McCoy's fraudulent schemes. Under McCoy's leadership, the ministry was used to recruit vulnerable individuals, including the Tates, into his financial exploitation tactics under the pretense of religious authority.

---

## III. FACTUAL BACKGROUND

### A. Overview of the Defendants' Criminal Enterprise

For nearly two decades, Plaintiffs Jimmy Tate and Jaleceya Tate, along with their four minor children, were devout members of Hope for Tomorrow Deliverance Center (HFT), a religious institution founded and controlled by Defendant Calvin McCoy Jr. Under the guise of religious leadership, McCoy and his co-defendants exploited the Plaintiffs' deep faith and trust. Throughout this period, the Plaintiffs contributed over $30,000 in donations, believing these funds were designated for charitable initiatives, including youth outreach programs. In reality, these funds were systematically misappropriated as part of a long-standing criminal enterprise designed to defraud the Plaintiffs and other unsuspecting victims.

Defendants Calvin McCoy Jr., Donnis McCoy, Henry Davies, Kerry Robertson, Kuyom Davenport, Flossie Perry, and other conspirators executed a sophisticated, multi-state racketeering scheme, spanning numerous jurisdictions, including Hawaii, Virginia, Chicago, Georgia, Arizona, Florida, Texas, Virginia, and Illinois. Central to this enterprise was the creation of over 1,000 fraudulent shell companies, deceptively registered using the names of the Plaintiffs and their minor children. Through this scheme, Defendants secured millions of dollars in fraudulent Paycheck Protection Program (PPP) loans, misusing federal resources intended for legitimate businesses impacted by the COVID-19 pandemic.

**B. Exploitation of Plaintiffs' Identities and Personal Information**

In 2020, the Defendants escalated their fraudulent activities by stealing the identities of the Plaintiffs and their children. Defendants McCoy Jr., Kuyum Davenport, Travis Jennings, Crystal Smith, Donnis McCoy, Kimberly Davies, Kerry Robertson, Carlos Hackworth, Flossie McCoy-Perry, Tonisha Locus-Footman and others, acting in concert, utilized highly sensitive personal information—including names, social security numbers, and even childhood nicknames—to establish numerous sham entities. These entities, fraudulently created in the Plaintiffs' names, were then used to apply for federal relief funds, including PPP loans, resulting in a fraud scheme that amassed over $50 million.

Defendant Kuyom Davenport, a licensed mental health professional, further violated federal law by unlawfully accessing the confidential medical records of Plaintiff Jaleceya Tate. Davenport's unauthorized access to Tate's Sexual Assault Kit (S.A. kit) represents not only a flagrant violation of privacy under HIPAA, but also a grotesque misuse of intimate medical information. Davenport, acting in conjunction with McCoy Jr., leveraged this deeply personal data to form additional fraudulent entities, brazenly naming some after notorious murder victims, thus compounding Plaintiff Jaleceya Tate's emotional trauma.

**C. Racketeering and Financial Fraud**

The Defendants' conduct transcends mere fraud; it constitutes a wide-reaching criminal enterprise, orchestrated to defraud federal institutions, misuse public trust, and exploit the Plaintiffs for personal gain. At the heart of this enterprise was Defendant McCoy Jr.'s manipulation of church members—including Plaintiffs—under the guise of religious authority.

Plaintiffs were induced to donate substantial sums, falsely believing that their contributions would benefit church-related activities and humanitarian outreach.

In reality, Defendants McCoy Jr., Donnis McCoy, Ambreka Calhoun, Kerry Robertson, Travis Jennings, Henry Davies, and others used these funds to expand their racketeering operation, employing deceptive financial tactics and engaging in wire fraud and mail fraud. This pattern of racketeering activity, as defined under **18 U.S.C. § 1962(c)**, is not isolated to Hawaii but extends across several states, further highlighting the Defendants' calculated use of interstate commerce to perpetrate their scheme. The Plaintiffs' identities were used to fraudulently secure federal loans, exacerbating the financial harm suffered by the Tate family and directly implicating them in the Defendants' illegal activities.

### D. Physical Intimidation and Emotional Coercion

Beyond financial fraud, the Defendants engaged in a campaign of intimidation and coercion to maintain control over the Plaintiffs and prevent them from uncovering the true nature of their activities. In 2016, during a church meeting, Defendant Henry Davies physically assaulted Plaintiff Jimmy Tate, threatening his life in front of several witnesses with a knife that Jimmy Tate had to tackle away from Henry Davies in order to protect his family and others present at the time. This egregious act of violence left the Tate family in fear for their safety, further cementing the Defendants' control through intimidation.

Defendants Calvin McCoy Jr., Donnis McCoy, and Kimberly Davies subsequently pressured Plaintiff Jaleceya Tate to forgive Henry Davies for the violent outburst that damaged walls inside of the church's sanctuary, leveraging religious pretense to manipulate her into silence. This

emotional coercion exacerbated Plaintiff  Jaleceya Tate's psychological distress, deepening the emotional harm already inflicted by the Defendants' earlier misconduct.

Subsequently, plaintiff Jaleceya Tate's medical records were unlawfully accessed by Defendants McCoy Jr. and Davenport, who used her S.A. kit to further their fraudulent scheme. The exploitation of such personal and traumatic information caused lasting emotional damage to Plaintiff Jaleceya Tate, amplifying the emotional and psychological toll inflicted by the Defendants.

**E. Retaliation and Legal Harassment**

Upon discovering the breadth of the fraudulent schemes carried out by the Defendants, the Plaintiffs sought to extricate themselves from the influence of Hope for Tomorrow Deliverance Center. In response, Defendants escalated their efforts to intimidate and retaliate against the Tate family. The defendant Calvin McCoy Jr., filed a fraudulent Temporary Restraining Order (TRO) against the Plaintiff Jaleceya Tate, baselessly accusing her of criminal activities. This legal harassment, compounded by a campaign of public defamation and threats, forced the Tate family to relocate to Hawaii to ensure their safety as detailed in Exhibit C.7.

Even after their relocation, Defendant Kimberly Davies maliciously leaked the Plaintiffs' new address to Defendant McCoy, once again jeopardizing the family's safety and well-being. The Plaintiffs were forced to abandon their successful real estate business in Georgia, suffering profound financial losses and ongoing emotional trauma as a result of the Defendants' actions.

**F. Financial Ruin and Emotional Devastation**

The fraudulent conduct and relentless harassment perpetrated by the Defendants have decimated the Plaintiffs financially and emotionally. Once successful real estate professionals, the Plaintiffs' business was irreparably destroyed by the Defendants' illegal use of their identities and constant harassment. The financial harm is measured not only by the loss of their real estate holdings but also by the substantial debt and legal liabilities incurred as a direct result of the Defendants' fraudulent enterprise as shown in Exhibit B.4.

The emotional damage suffered by Plaintiff Jaleceya Tate is severe and ongoing. The misuse of her Sexual Assault Kit and medical records, compounded by public humiliation and relentless defamation, has inflicted profound and lasting emotional trauma. The Defendants, led by Calvin McCoy Jr., engaged in a particularly malicious scheme by not only exploiting Plaintiff Tate's personal medical information but also by associating her and her family with both real murder victims and their surviving family members, along with fictional victims from famous crime novels.

In one instance, the Defendants named shell companies after Laci Rocha Peterson, a young woman whose murder captivated the nation. More egregiously, the Defendants, including Kuyom Davenport, went beyond using the names of deceased victims and incorporated the names of their surviving family members—such as the brothers and sisters of high-profile victims—alongside the names of the Tates' minor children. This cruel manipulation blurred the line between reality and fiction, further exploiting the Tate family and intensifying their emotional suffering. For example, in one of these fraudulent entities, the name of Laci Peterson's brother was used in conjunction with the name of one of the Tates' sons, making the fraudulent

15

use deeply personal and emotionally damaging.

(See Exhibit A.1 for evidence of fraudulent shell companies and loans obtained from the Small Business Administration also known as the SBA)

Adding further cruelty, McCoy fabricated a false identity, Calvin Tate Jr., a non-existent son of Plaintiff Jimmy Tate, to create additional shell companies. McCoy's invention of this fictional child reflected his sick obsession with the Tate family, further entangling them in his fraudulent schemes. By doing so, the Defendants blurred the distinction between real and fabricated personas, heightening the reputational harm and distress inflicted on the Plaintiffs. These fabricated identities not only confused and harmed the Tate family but also created additional public humiliation and personal violation.

(See Exhibit B.2 for documented registered corporate filings with this fraudulent name Calvin Tate Jr.)

Furthermore, the Defendants extended their scheme into the realm of fiction, using the names of murdered lead female characters from famous novels, including Strangers on a Train, where the violent deaths of women were central plot elements. By linking the Tate family and their children to both real and fictional victims of violence, the Defendants aimed to maximize the psychological torment inflicted upon the Plaintiffs.

(See Exhibit C.1 for evidence of the use of fictional character names in shell companies created by the defendants)

This calculated and systematic exploitation of real victims, fictional characters, and surviving family members magnified the emotional and reputational harm suffered by Plaintiff Jaleceya Tate and her family. The deliberate selection of high-profile murder cases and fictional violent

16

deaths ensured that the Tate family's pain and suffering were amplified, pushing them into the public eye in the most dehumanizing and humiliating way possible.

The cumulative impact of the Defendants' egregious actions has caused Plaintiff Jaleceya Tate to suffer severe and lasting emotional trauma. Her family's identity and reputation have been irreparably damaged, and the financial devastation caused by the fraudulent use of their names, compounded by relentless public humiliation, has left the Plaintiffs in ruin.

---

## IV. CAUSES OF ACTION

## COUNT 1: FRAUDULENT MISREPRESENTATION

**(Against All Defendants)**

1. Plaintiffs incorporate by reference all previous paragraphs of this complaint as though fully set forth herein.

2. Defendants intentionally misrepresented material facts to Plaintiffs regarding the financial management of Hope for Tomorrow Deliverance Center and the purported charitable donations and outreach programs. Specifically, Defendants misled Plaintiffs into believing that their contributions were used for legitimate church and community purposes when, in fact, the funds were diverted for personal financial gain, including the creation of fraudulent shell companies and the acquisition of Paycheck Protection Program (PPP) loans.

3. Precedent: In Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979 (2004), the court found that fraudulent misrepresentation occurs when a party intentionally misrepresents material facts with the intent to induce reliance, and the other party reasonably relies on those misrepresentations to their detriment. The facts of this case align, as Plaintiffs were induced into contributing funds based on Defendants' misrepresentations.

4. Defendants Calvin McCoy Jr., Donnis McCoy, Henry Davies, and Kimberly Davies, in particular, used their positions of authority within the church to coerce financial donations and misrepresent the nature of church-related projects, including false representations regarding outreach programs such as Crunk 4 Christ Radio.

5. Plaintiffs reasonably relied on these misrepresentations, continuing to donate significant funds and invest in the Defendants' fraudulent activities. These actions were carried out by Defendants across multiple states, including Hawaii, Georgia, and Texas, impacting the Plaintiffs financially and emotionally.

6. Precedent: As in Lazar v. Superior Court, 12 Cal. 4th 631 (1996), the reliance on fraudulent misrepresentations caused significant financial loss, and the court ruled that compensatory and punitive damages were appropriate where fraud induced reliance. Plaintiffs in this case similarly suffered significant financial and emotional harm as a direct result of Defendants' fraudulent conduct.

7. As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiffs suffered substantial financial losses, emotional distress, and reputational damage.

8. Plaintiffs are entitled to compensatory damages, punitive damages, and other relief as this Court deems just and proper, in an amount to be determined at trial.

## COUNT 2: CONSPIRACY TO DEFRAUD

**(Against All Defendants)**

1. Plaintiffs incorporate by reference all previous paragraphs of this complaint as though fully set forth herein.

2. Defendants entered into a coordinated conspiracy to defraud Plaintiffs by establishing a network of fraudulent shell companies, misusing Plaintiffs' personal information, including the names of their minor children, and unlawfully obtaining millions of dollars in PPP loans.

3. Specifically, Defendants Calvin McCoy Jr., Donnis McCoy, Henry Davies, and Travis Jennings conspired to create over 1,000 shell companies using false identities derived from Plaintiffs' personal information, with the intent to defraud federal and state agencies, including the Small Business Administration (SBA).

4. As part of this conspiracy, Defendants also unlawfully accessed Plaintiff Jaleceya Tate's Sexual Assault Kit (S.A. kit), using highly sensitive and private information to name fraudulent entities and further their criminal enterprise.

5. Precedent: In Koch v. Koch Indus., Inc., 203 F.3d 1202 (10th Cir. 2000), the court upheld conspiracy to defraud claims where multiple actors engaged in coordinated fraudulent activity to induce financial loss. Similarly, the Defendants' coordinated efforts across multiple states to misappropriate funds using fraudulent identities aligns with the elements of conspiracy to defraud.

6. Defendants' conspiracy extended over several years and involved coordinated efforts across multiple states, as evidenced by Exhibit B.5, which details the illegal activities conducted by Defendants.

7. As a direct and proximate result of Defendants' conspiracy to defraud, Plaintiffs suffered severe financial, emotional, and reputational damage, as well as ongoing legal liabilities tied to the fraudulent shell companies.

8. Plaintiffs are entitled to compensatory, punitive, and other damages in an amount to be determined at trial.

---

## COUNT 3: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against All Defendants)

1. Plaintiffs incorporate by reference all previous paragraphs of this complaint as though fully set forth herein.

2. Defendants engaged in extreme and outrageous conduct by fraudulently using Plaintiffs' personal information, unlawfully accessing Plaintiff Jaleceya Tate's medical and sexual assault records, and creating fraudulent companies named after notorious murder victims and personal details of Jaleceya Tate's trauma.

3. Precedent: In Molien v. Kaiser Foundation Hospitals, 27 Cal. 3d 916 (1980), the court held that intentional infliction of emotional distress can be established when the defendant's conduct is extreme and outrageous and results in severe emotional trauma.

Here, the unlawful use of intimate medical records clearly constitutes extreme and outrageous conduct.

4. Defendants knew or should have known that their actions would cause Plaintiffs severe emotional distress. The unlawful use of deeply personal and intimate information, combined with the extensive retaliation campaign against the Plaintiffs—including the filing of false Temporary Restraining Orders (TROs)—was intended to intimidate, harass, and emotionally harm the Plaintiffs.

5. Precedent: In Christensen v. Superior Court, 54 Cal. 3d 868 (1991), the court found that intentional mishandling of sensitive information caused severe emotional trauma to the victims' families. The misuse of Plaintiff Jaleceya Tate's Sexual Assault Kit similarly caused severe and ongoing emotional harm.

6. As a direct and proximate result of Defendants' actions, Plaintiffs suffered severe emotional distress, including anxiety, depression, fear for their safety, and mental anguish, all of which have been medically documented.

7. Plaintiffs are entitled to compensatory, punitive, and other damages in an amount to be determined at trial.

---

## COUNT 4: INVASION OF PRIVACY

**(Against All Defendants)**

1. Plaintiffs incorporate by reference all previous paragraphs of this complaint as though fully set forth herein.

2. Defendants invaded the privacy of Plaintiffs by unlawfully accessing Plaintiff Jaleceya Tate's Sexual Assault Kit and medical records from Grady Memorial Hospital, without her consent, and using the private, sensitive information to create fraudulent shell companies for personal financial benefit.

3. Precedent: In Hill v. NCAA, 7 Cal. 4th 1 (1994), the court emphasized that the unauthorized access and misuse of personal and sensitive information constitutes a violation of privacy rights. Here, the Defendants' misuse of confidential medical records for fraudulent purposes similarly constitutes a violation of Plaintiffs' privacy rights.

4. Defendants, including Kuyom Davenport and Calvin McCoy Jr., conspired to unlawfully obtain medical information to perpetuate their fraudulent schemes, as documented in Exhibit B.6.

5. Additionally, Defendants violated the privacy of Plaintiffs by using their personal names, addresses, and the names of their minor children without permission, exposing the Plaintiffs to severe emotional and financial harm.

6. Precedent: In Doe v. Gangland Prods., Inc., 730 F.3d 946 (9th Cir. 2013), the court upheld an invasion of privacy claim where private information was used without consent, causing emotional distress. Similarly, the unauthorized use of Plaintiffs' sensitive medical records and personal information by Defendants caused significant harm.

7. As a direct and proximate result of Defendants' invasion of privacy, Plaintiffs suffered emotional distress, financial harm, and significant reputational damage.

8. Plaintiffs are entitled to compensatory, punitive, and other damages in an amount to be determined at trial.

**COUNT 5: NEGLIGENCE**

**(Against All Defendants)**

1. Plaintiffs incorporate by reference all previous paragraphs of this complaint as though fully set forth herein.

2. Defendants owed a duty of care to Plaintiffs to not misuse their personal information, manipulate their trust, or engage in fraudulent activities that would foreseeably cause harm.

3. Defendants breached this duty of care by engaging in fraudulent activities, including the creation of shell companies using Plaintiffs' personal information, and intentionally mismanaging the finances of Hope for Tomorrow Deliverance Center for personal gain.

4. Precedent: In Rowland v. Christian, 69 Cal. 2d 108 (1968), the court held that the breach of duty leading to foreseeable harm constitutes actionable negligence. Defendants' failure to exercise reasonable care in handling Plaintiffs' sensitive information and finances resulted in severe emotional and financial harm.

5. Defendants' negligence, particularly in failing to protect the private and sensitive information of Plaintiffs, directly caused Plaintiffs significant financial losses, emotional distress, and reputational damage.

6. As a direct and proximate result of Defendants' negligence, Plaintiffs are entitled to compensatory damages in an amount to be determined at trial.

---

**COUNT 6: RICO VIOLATIONS**

**(Against All Defendants)**

1.  Plaintiffs incorporate by reference all previous paragraphs of this complaint as though fully set forth herein.

2.  Defendants engaged in a pattern of racketeering activity, as defined under 18 U.S.C. § 1961(1), including acts of wire fraud, mail fraud, and financial fraud, through the creation and operation of over 1,000 fraudulent shell companies across multiple states.

3.  Precedent: The U.S. Supreme Court in Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985) affirmed that RICO claims may proceed when there is a clear pattern of racketeering activity that causes harm to business or property, as in this case where Defendants engaged in repeated and coordinated fraudulent acts.

4.  The Defendants, including Calvin McCoy Jr., Donnis McCoy, and Henry Davies, acted as part of an enterprise under 18 U.S.C. § 1962(c), engaging in a continuous criminal enterprise for personal financial gain.

5.  Defendants used Plaintiffs' identities and personal information to secure fraudulent PPP loans totaling over $50 million, directly tying Plaintiffs to illegal activities and causing them ongoing legal liabilities.

6.  Precedent: In H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989), the Supreme Court found that repeated acts of fraud, when part of an ongoing criminal enterprise, qualify as a pattern of racketeering under RICO. Defendants' continuous and coordinated activities align with these elements.

7.  Defendants' racketeering activities were conducted with the specific intent to defraud federal and state institutions and to cause financial and emotional harm to the Plaintiffs.

24

8. As a direct and proximate result of Defendants' RICO violations, Plaintiffs suffered severe financial losses, emotional distress, and reputational damage, and are entitled to treble damages, punitive damages, and other relief as the Court deems just and proper.

9. Plaintiffs are entitled to damages, including treble damages under the RICO statute, in an amount to be determined at trial.

---

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Jimmy Tate and Jaleceya Tate, individually and on behalf of their minor children, respectfully request that this Court grant the following relief:

**Compensatory Damages**:

Compel the Defendants to pay compensatory damages in an amount to be determined at trial, including, but not limited to:

- Financial losses suffered by the Plaintiffs as a direct result of the Defendants' fraudulent use of their identities, including, but not limited to, the destruction of their real estate business and the loss of future earnings.

- Emotional distress and mental anguish, resulting from the Defendants' egregious misuse of Plaintiff Jaleceya Tate's Sexual Assault Kit, personal medical records, and the targeting of the Plaintiffs' minor children in their fraudulent schemes. The use of intimate, sensitive information in a deliberate and public manner has caused severe, ongoing emotional trauma.

25

- ○ Engaging in fraudulent business practices, including, but not limited to, racketeering activities, the creation of shell companies, and the misuse of personal identities.

- ○ Reputational damage resulting from the Defendants' deliberate association of the Plaintiffs with high-profile murder victims, their surviving family members, and fictional characters used in their fraudulent enterprises. These actions have irreparably harmed the Plaintiffs' standing in their professional and personal communities.

- ○ Compensatory damages are sought under the principle that tort victims are entitled to be restored to their pre-injury position, as articulated in Hadley v. Baxendale, 156 Eng. Rep. 145 (1854), ensuring that the Plaintiffs receive full compensation for the broad scope of harm suffered.

2. **Treble Damages**:

Mandate that the Defendants pay treble damages pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964(c). The Defendants' sustained and coordinated pattern of racketeering activity, involving fraudulent shell companies, the exploitation of personal and sensitive identities, and the ongoing financial and emotional harm inflicted on the Plaintiffs, merits the full application of treble damages. The RICO statute specifically provides for treble damages in cases where plaintiffs have been injured by the defendants' ongoing racketeering, a remedy upheld in Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985). The egregiousness of the Defendants' conduct in this case, marked by a continuous criminal enterprise, warrants maximum statutory recovery.

26

3. **Punitive Damages**:

Award punitive damages in an amount sufficient to punish the Defendants for their willful, reckless, and malicious disregard for the Plaintiffs' rights, and to deter any future fraudulent conduct of this nature. The Defendants' calculated use of the Plaintiffs' identities, combined with their exploitation of high-profile murder victims, their surviving family members, and fictional characters, reveals a level of cruelty and recklessness that justifies a substantial punitive award.

   o In BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996), the Supreme Court established that punitive damages may be imposed where the defendant's actions are especially reprehensible, as is the case here. The intentional, coordinated, and malicious acts committed by the Defendants fall squarely within this framework.

   o Moreover, State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003) reinforces the notion that punitive damages may be imposed to reflect the harm caused and to serve as a deterrent for similarly egregious behavior in the future. The Defendants' actions qualify as "reprehensible" under the standards set by the Court, further justifying an award of punitive damages.

4. **Injunctive Relief**:

Issue a permanent injunction barring the Defendants, and all those acting in concert with them, from:

   o Using the Plaintiffs' names, likenesses, personal information, or any other identifying data for any purpose, including the creation of fraudulent entities or shell companies.

- ○ Harassing, defaming, or publicly targeting the Plaintiffs or their minor children, directly or indirectly.

- ○ An injunction is necessary to prevent irreparable harm to the Plaintiffs, as recognized in eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006), where the Court held that equitable relief is warranted when there is a likelihood of continued harm. Given the scope and intensity of the Defendants' fraudulent activities, injunctive relief is essential to protect the Plaintiffs from further harm.

5. **Attorneys' Fees and Costs**:

   Order the Defendants to pay all reasonable attorneys' fees and costs incurred by the Plaintiffs in pursuing this action, as authorized by RICO, 18 U.S.C. § 1964(c). The Plaintiffs have been forced to incur substantial legal fees to combat the Defendants' fraudulent actions, and they are entitled to recover these costs in accordance with federal law and established precedent.

6. **Prejudgment and Post-Judgment Interest**:

   Award prejudgment and post-judgment interest, as permitted by law, to ensure that the Plaintiffs are fully compensated for the extended duration during which their identities were fraudulently used, and their reputations and emotional well-being were severely damaged. Such interest is necessary to provide full and fair compensation for the Plaintiffs' losses, consistent with the Restatement (Second) of Torts § 913.

7. **Any Further Relief**:

   Grant such other and further relief as this Court deems just and proper, including any additional damages or equitable remedies warranted by the Defendants' malicious

conduct, their racketeering activities, and the continuing emotional, reputational, and financial harm suffered by the Plaintiffs.

---

## VI. JURY DEMAND

Plaintiffs respectfully demand a trial by jury on all issues so triable.

---

## VII. VERIFICATION AND SIGNATURES

### Verification

We, Jimmy Tate and Jaleceya Tate, hereby declare under penalty of perjury pursuant to **28 U.S.C. § 1746** and the laws of the United States of America, that the facts and allegations contained in this Complaint are true and correct to the best of our knowledge, information, and belief, based on the information available to us at the time of this filing.

We further affirm that:

1. We have reviewed the contents of this Complaint in full and understand the legal claims, factual assertions, and evidence presented therein.

2.  The factual allegations made within this Complaint are based on our personal knowledge and experience, as well as information provided to us through documents, recordings, and other verifiable sources.

3.  Where statements are based on information and belief, we have made diligent efforts to investigate and verify the accuracy of the information to the best of our ability.

4.  We acknowledge our legal obligation to provide truthful statements in this Complaint and understand that providing false or misleading information could result in penalties under applicable laws, including those governing perjury.

5.  We affirm the accuracy of this Complaint in good faith, fully understanding the legal and factual basis for each claim made.

In light of the above, we affirm that the statements made in this Complaint are **true and correct** to the best of our knowledge, information, and belief, and we submit this verification in accordance with the applicable rules of law.


**Jimmy-Sharod Tate**

Date: 10-28-24


**Jaleceya Tate**

Date: 10/28/24

**Contact Information:**

1001 Kamokila BLVD Suite 115

Kapolei, HI 96707

Email: sharodtate07@gmail.com